UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| T.D.Q.,[1] <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Acting Commissioner of Social Security, <br><br> Defendant. | Case No. 2:17-cv-03623-SHK <br><br><br> OPINION AND ORDER |

Plaintiff T.D.Q.[1] ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner," the "Agency," or "Defendant") denying his application for disability insurance benefits ("DIB"), under Title II of the Social Security Act (the "Act"). This Court has jurisdiction, under 42 U.S.C. § 405(g), and, pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of the undersigned United States Magistrate Judge. For the reasons stated below, the Commissioner's

---

[1] The Court substitutes Plaintiff's initials for Plaintiff's name to protect Plaintiff's privacy with respect to Plaintiff's medical records discussed in this Opinion and Order.

decision is REVERSED and this action is REMANDED for further proceedings consistent with this Order.

## I. BACKGROUND

Plaintiff filed an application for DIB on April 17, 2014, alleging disability beginning on October 16, 2012. Transcript ("Tr.") 322-25.[2] Following an initial denial of benefits, Plaintiff requested a hearing before an administrative law judge ("ALJ") and, on November 18, 2015, the initial ALJ determined that Plaintiff was not disabled. Tr. 116-33. Plaintiff sought review of the ALJ's decision with the Appeals Council ("AC"), and on April 13, 2016, the AC vacated the ALJ's decision and remanded the case to the ALJ for further administrative proceedings. Tr. 134-37.

A second hearing was held on August 29, 2016, and the ALJ issued a second ruling on December 5, 2016, determining that Plaintiff was not disabled. Tr. 17-26, 71-95. Plaintiff sought review of the second ALJ's decision with the AC, and on March 15, 2017, the AC denied review. Tr. 1-6. This appeal followed.

## II. STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on correct legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that

---

[2] A certified copy of the Administrative Record was filed on August 28, 2017. Electronic Case Filing Number ("ECF No.") 19. Citations will be made to the Administrative Record or Transcript page number rather than the ECF page number.

2

supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

"'When evidence reasonably supports either confirming or reversing the ALJ's decision, [the Court] may not substitute [its] judgment for that of the ALJ.'" Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting Batson, 359 F.3d at 1196)); see also Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) ("If the ALJ's credibility finding is supported by substantial evidence in the record, [the Court] may not engage in second-guessing.") (citation omitted). A reviewing court, however, "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted). Finally, a court may not reverse an ALJ's decision if the error is harmless. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

### III. DISCUSSION

#### A. Establishing Disability Under The Act

To establish whether a claimant is disabled under the Act, it must be shown that:

(a) the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and

(b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)). "If a claimant meets both requirements, he or she is 'disabled.'" Id.

The ALJ employs a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a). Each step is potentially dispositive and "if a claimant is found to be 'disabled' or 'not-disabled' at any step in the sequence, there is no need to consider subsequent steps." Tackett, 180 F.3d at 1098; 20 C.F.R. § 404.1520. The claimant carries the burden of proof at steps one through four, and the Commissioner carries the burden of proof at step five. Tackett, 180 F.3d at 1098.

The five steps are:

> Step 1. Is the claimant presently working in a substantially gainful activity [("SGA")]? If so, then the claimant is "not disabled" within the meaning of the [] Act and is not entitled to [DIB]. If the claimant is not working in a [SGA], then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two. See 20 C.F.R. § 404.1520(b).
>
> Step 2. Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to [DIB]. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three. See 20 C.F.R. § 404.1520(c).
>
> Step 3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and therefore entitled to [DIB]. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step

| | |
|---|---|
| 1 | three and the evaluation proceeds to step four. See 20 C.F.R. |
| 2 | § 404.1520(d). |
| 3 | Step 4. Is the claimant able to do any work that he or she has |
| 4 | done in the past? If so, then the claimant is "not disabled" and is not |
| 5 | entitled to [DIB]. If the claimant cannot do any work he or she did in |
| 6 | the past, then the claimant's case cannot be resolved at step four and |
| 7 | the evaluation proceeds to the fifth and final step. See 20 C.F.R. |
| 8 | § 404.1520(e). |
| 9 | Step 5. Is the claimant able to do any other work? If not, then |
| 10 | the claimant is "disabled" and therefore entitled to [DIB]. See 20 |
| 11 | C.F.R. § 404.1520(f)(1). If the claimant is able to do other work, then |
| 12 | the Commissioner must establish that there are a significant number of |
| 13 | jobs in the national economy that claimant can do. There are two ways |
| 14 | for the Commissioner to meet the burden of showing that there is other |
| 15 | work in "significant numbers" in the national economy that claimant |
| 16 | can do: (1) by the testimony of a vocational expert [("VE")], or (2) by |
| 17 | reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, |
| 18 | subpt. P, app. 2. If the Commissioner meets this burden, the claimant |
| 19 | is "not disabled" and therefore not entitled to [DIB]. See 20 C.F.R. |
| 20 | §§ 404.1520(f), 404.1562. If the Commissioner cannot meet this |
| 21 | burden, then the claimant is "disabled" and therefore entitled to [DIB]. |
| 22 | See id. |

Id. at 1098-99.

### B. Summary Of ALJ's Findings

The ALJ determined that "[Plaintiff] last met the insured status requirements of the . . . Act on December 31, 2015." Tr. 19. The ALJ then found at step one, that "[Plaintiff] did not engage in [SGA] during the period from his alleged onset date from October 16, 2012 through his date last insured of December

5

31, 2015 (20 CFR 404.1571 et seq.)." Id. At step two, the ALJ found that "[t]hrough the date last insured, "[Plaintiff] has the following severe impairments: degenerative disc disease of the cervical lumbar spine and left piriformis syndrome (20 CFR 404.1520(c))." Id. At step three, the ALJ found that "[t]hrough the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." Tr. 21.

In preparation for step four, the ALJ found that, through the date last insured, Plaintiff had the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b), specifically as follows: [Plaintiff] can lift and/or carry 20 pounds occasionally and 10 pounds frequently; he can stand and/or walk for 6 hours out of an 8-hour workday with regular breaks; he can sit for 6 hours out of an 8-hour workday with regular breaks; he can frequently bend, balance, stoop, kneel, crouch, and crawl; he can occasionally climb ladders, ropes, or scaffolds; and he can occasionally reach overhead with the bilateral upper extremity.

Tr. 22. The ALJ then found, at step four, that "[t]hrough the date last insured, [Plaintiff] was capable of performing [PRW] as a customer services worker and order expediter. This work does not require the performance of work-related activities precluded by [Plaintiff's] [RFC] (20 CFR 404.1565)." Tr. 25. The ALJ, therefore, concluded that "[Plaintiff] was not under a disability, as defined in the . . . Act, at any time from October 16, 2012, the alleged onset date, through December 31, 2015, the date last insured (20 CFR 404.1520(f))." Id.

/ / /
/ / /
/ / /

6

## C. Issues Presented

In this appeal, Plaintiff raises two issues, including whether the ALJ properly considered: (1) the medical opinions of two of Plaintiff's treating doctors; and (2) Plaintiff's testimony. ECF No. 30, Joint Stipulation at 4.

### 1. ALJ's Consideration Of Plaintiff's Treating Doctors' Opinions

The ALJ began his analysis of the medical evidence by giving "significant weight to the opinions of the State agency medical consultants and Dr. Chuang[,]" but found that "[n]o single assessment has been completely adopted as the [RFC] adopted herein." Tr. 24. The ALJ then discussed the opinions of Plaintiff's treating physicians, Drs. Penkoff and Denicola, and noted that on April 27, 2015, Dr. Penkoff opined that Plaintiff could:

> lift and carry 5 to 10 pounds occasionally and 0 to 5 pounds frequently; can sit, stand, and walk for 1 hour in an 8-hour workday; can grasp and perform fine manipulation for 20 percent of an 8-hour workday; can push and pull for 15 percent of an 8-hour workday; cannot bend, squat, crawl, climb, or reach above shoulder level; and cannot work at unprotected heights, work around moving machinery, be exposed to marked temperature changes and humidity, drive automotive equipment, and be exposed to pulmonary irritants.

Id. (citing Tr. 815-17).

The ALJ observed that on August 19, 2016, Dr. Denicola opined that Plaintiff could:

> Lift and carry 50 pounds rarely, up to 20 pounds occasionally, and less than 10 pounds frequently; can sit, stand, and walk for 1 hour in an 8-hour workday; can occasionally reach in all directions, handle, finger, and feel with the bilateral upper extremity; can rarely push and pull with the bilateral upper extremity; can occasionally use foot controls with

>            the bilateral lower extremity; care [sic] rarely climb ramps and stairs;
>            can occasionally balance; cannot climb ladders, ropes, or scaffolds;
>            cannot stoop, kneel, crouch, crawl, or rotate head and neck; cannot
>            work at unprotected heights, work with moving mechanical parts,
>            operate a vehicle, work with humidity and wetness, work in extreme
>            cold or heat, or tolerate pulmonary irritants; and may be absent from
>            work for more than 4 days a month.

Id. (citing Tr. 1136-39).

The ALJ gave "little weight" to the opinions of Drs. Penkoff and Denicola, because "[t]heir opinion[s] that [Plaintiff] retains the capacity to perform a narrow range of sedentary exertional work is without substantial support from the medical evidence of record[,]" and "[o]verall, clinical and diagnostic data of [Plaintiff's] cervical and lumbar spine were mild." Id. The ALJ added that Drs. Penkoff's and Denicola's "restriction to sedentary exertional work is inconsistent with [Plaintiff's] ability to do light dusting, vacuuming, and cleaning, driving a car, shopping in stores, going for walks, and taking care of a small child." Id. (citing Tr. 380-82, 401, 1154).

With respect to the clinical findings that the ALJ found were mild, the ALJ noted earlier in the decision that Plaintiff's "examinations generally revealed decreased range of motion and tenderness and trapezius muscle spasm but with no indication [of] focal neurological deficits, such as abnormal gait, reflexes, or muscle strength." Id. (citing Tr. 493, 496, 506, 543, 546, 751, 821, 830, 834, 838, 854, 900-01, 930, 950, 956). The ALJ added that "[t]reatment of Plaintiff's neck and back was limited to physical therapy and prescription pain medications." Tr. 23 (citing Tr. 506, 519, 544, 547, 691-732, 823, 862-79).

With respect to the diagnostic data that the ALJ found were mild, the ALJ noted earlier in the decision that MRI findings of Plaintiff's cervical spine from November 2013, February 2014, and September 2015 revealed "a 2-mm disc

8

protrusion and mild-to-moderate right foraminal stenosis at C4-C5[,] . . . mild degenerative disc disease [("DDD")] at C4-C5 and C5-C6[,] . . . [and] a 3-mm disc protrusion at L5-S1." Id. (citing Tr. 834, 838-39, 930, 950). The ALJ also noted that an X-ray from August 2013 "was unremarkable." Id. (citing Tr. 522).

### 2. Support For Doctors' Findings

Drs. Penkoff and Denicola supported their above discussed findings by referencing diagnoses and objective medical evidence drawn from their longitudinal treatment of Plaintiff. Specifically, Dr. Denicola noted that he had treated Plaintiff for one year and eight months, and that his findings were supported by Plaintiff's treatment history and diagnoses of, cervical radiculitis, lumbago, chronic pain syndrome, and fibromyalgia. Tr. 1136. When asked which specific symptoms and clinical findings supported the limitations assessed, Dr. Denicola noted that Plaintiff's "severe L4-L5 [and] L5-S1 DDD w[ith] chronic neck pain limits [Plaintiff's] lower back and bilateral upper extremity movement[,]" an "MRI of lumbar severe DDD causes [Plaintiff] to be limited in times of sitting, standing, and walking[,]" and "chronic neck pain caus[es] [Plaintiff] to be unable to use [his] bilat[eral] [upper extremities] at times (cervical radiculopathy)." Tr. 1137-38. Similarly, Dr. Penkoff noted that his opinion was based on Plaintiff's diagnoses with cervical and lumbar radiculopathy, for which Dr. Penkoff provided a "poor prognosis" at the time he rendered his opinion of Plaintiff's capabilities. Tr. 815.

### 3. Parties' Arguments

Plaintiff argues that the ALJ failed to articulate specific and legitimate reasons for rejecting the treating source opinions of Drs. Penkoff and Denicola. ECF No. 30, Joint Stipulation at 5. Defendant argues that "the ALJ properly considered medical opinion and other evidence, including opinions from Drs. Penkoff and DeNicola in assessing Plaintiff's RFC." Id. at 9.

/ / /

/ / /

9

### D. Standard To Review ALJ's Consideration of Plaintiff's Treating Doctor's Opinions

There are three types of medical opinions in Social Security cases: those from treating physicians, examining physicians, and non-examining physicians. Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009) (citation omitted). "The medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)). "When a treating physician's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician." Id. (citing 20 C.F.R. § 404.1527(c)(2)–(6)).

"'To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence.'" Id. (quoting Ryan v. Comm'r Soc. Sec. Admin., 528 F.3d 1194, 1198 (9th Cir. 2008)). "This is not an easy requirement to meet: 'the clear and convincing standard is the most demanding required in Social Security cases.'" Garrison v. Colvin, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting Moore v. Comm'r Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)).

"'If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.'" Trevizo, 871 F.3d at 675 (quoting Ryan, 528 F.3d at 1198). "This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling

weight.'" Garrison, 759 F.3d at 1012 (quoting Orn v. Astrue, 495 F.3d 625, 633 (9th Cir. 2007)). "'The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" Trevizo, 871 F.3d at 675 (quoting Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).

### E. ALJ's Decision Is Not Supported By Substantial Evidence

As an initial matter, the Court notes that although the ALJ accorded greater weight to the opinions of Dr. Chuang and the State agency medical consultants than he accorded to Drs. Penkoff and Denicola, the ALJ did not specifically find that the opinions of Drs. Penkoff and Denicola were contradicted by the opinions of Dr. Chuang or the State agency medical consultants. Accordingly, because the ALJ did not find that the opinions of Drs. Penkoff and Denicola were contradicted by the opinions of another doctor, the specific and legitimate standard applies here. Trevizo, 871 F.3d at 675; see also Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted) (the Court cannot affirm the ALJ's decision on grounds not invoked by the Commissioner).

Here, the ALJ's reasons for rejecting Drs. Penkoff's and Denicola's opinions—that they (1) were not supported by the medical record; and (2) were inconsistent with Plaintiff's activities of daily living ("ADLs")—both fail because the ALJ relied on only portions of the record, while ignoring other evidence indicating that Plaintiff's impairments were greater than the ALJ acknowledged. See Holohan v. Massanari, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (holding an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others).

#### 1. Overlooked Medical Evidence

Included in the medical evidence overlooked by the ALJ were clinical findings, diagnostic data, and treatment for Plaintiff's symptoms. For example, the ALJ's summary of the medical evidence overlooks diagnoses of a sprained neck in November 2012, "cervical strain/sprain" and a "possible cervical disk protrusion"

11

in December 2012, cervicalgia, trigger point myospasms, and cervical spine strain/sprain in March 2013, and diagnostic impressions from June 2015 of "possible 'stiff man syndrome[,]'" a condition that Plaintiff testified could be the source of his impairments. Tr. 42-43, 492-93, 751, 821, 902. The ALJ also did not discuss an x-ray of Plaintiff's cervical spine from December 2012, show[ing] reversal of lordosis as well as some endplate irregularity at C7-T1[,]" and a note from March 2013 that also indicated "[s]traightening of normal cervical lordotic curve." Tr. 751, 900. The ALJ did not observe or discuss notations throughout Plaintiff's longitudinal treatment records indicating "severe pain[,]" that doctors described as "2/2 pain[,]" Plaintiff's noted inability to move his neck in any direction at times, increased "stiffness of paraspinal muscles[,]" "Pain w/Mobility Deficit[,]" and a notation that lifting, sleeping, and turning his neck to the left aggravated Plaintiff's symptoms. Tr. 492-93, 506, 520, 534. The ALJ's characterization of Plaintiff's spasms being limited to his trapezius is also not supported by the record. Instead, the record reveals that Plaintiff also suffered from frequent paraspinal muscle spasms and "[t]rigger point myospasm[s]." Tr. 854, 900.

The ALJ's characterization of Plaintiff's treatment being limited to physical therapy and pain medication also lacks support in the record. The record reveals, instead, that Plaintiff also received chiropractic treatment, "[n]arcotic injection pain medication[,]" trigger point injections, acupressure, acupuncture, massage therapy, myofascial release, and that Plaintiff even consulted an orthopedic surgeon, but was told that surgery could make his condition worse, and was also "cautioned . . . to avoid an aggressive chiropractic manipulation." Tr. 47-48, 83, 88, 573, 581, 751, 830.

The record further reveals that Plaintiff was prescribed more than just pain medication, as the ALJ noted, to treat his symptoms. Instead, Plaintiff was also prescribed anti-inflammatory, muscle relaxant, and anti-spasticity medications, was

12

advised to apply a "[h]eating pad to the area, [and] massage with Ben Gay[,]" and it was recommended that "[f]or [Plaintiff's cervicalgia, trigger point myospasms, and cervical spine strain/sprain, . . . [Plaintiff's] future medical care" should also include:

- A soft cervical collar for support and use while sleeping to help alleviate pain-related insomnia[;]
- Physiotherapy, to include heat, TENS unit, massage therapy, cold laser, and therapeutic sonogram. [Plaintiff] will likely need at least 24 sessions[;]
- A cervical traction kit to help alleviate trigger points[;] [and]
- A home IF unit for continued electrotherapy once he has completed physiotherapy.

Tr. 492-93, 506, 902.

In addition to the aforementioned medical treatment that Plaintiff pursued that was not observed by the ALJ, the record also reveals that Plaintiff was unable to pursue some recommended additional treatment due to lack of funds, and that Plaintiff also chose not to pursue some treatment and medications due to adverse side effects. For example, Plaintiff testified at the hearing that "different neurologists . . . all basically said [that Plaintiff] need[ed] to go see a specialist, like at UC Irvine . . . [b]ut then [his] insurance . . . do[es]n't want to send [him] out there." Tr. 78. Plaintiff also expressed concern about the cost of an MRI of his cervical spine at one point in the record, and indicated at the hearing that he had "spent a lot of money, of [his] own money, . . . which is why [he is] broke, trying to get better." Tr. 48, 751. Plaintiff also indicated at the hearing that he has been to the emergency room several times for his neck spasms, but that "the medicines they gave [him] ma[de] [him] so sick that [he] do[esn't] even go to them . . . anymore, because there's nothing they can do for [him], other than give [him] something that'll make [him] nauseous." Tr. 52.

13

Accordingly, on the record before the Court, Plaintiff's treatment exceeded that which was acknowledged by the ALJ, and was limited in other aspects for good reasons, including lack of money, adverse reactions to medications, and medical recommendations not to pursue surgery and additional extensive chiropractic treatment. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) ("[A]n unexplained, or inadequately explained, failure to seek treatment . . . can cast doubt on the sincerity of the claimant's pain testimony" unless one of a "number of good reasons for not doing so applies."). As such, inconsistency with the medical evidence of record was not a clear and convincing, nor even a specific and legitimate, reason for discrediting Drs. Penkoff's and Denicola's opinions.

**2. Overlooked Limitations In Plaintiff's ADL's**

With respect to the ALJ's rejection of Drs. Penkoff's and Denicola's opinions because they were not supported by Plaintiff's ADLs, the Court finds that the ALJ's finding fails because Plaintiff performed the ADLs cited by the ALJ in a more limited fashion than the ALJ observed, and with pain. For example, the ALJ found that Plaintiff was able to care for a small child. Tr. 24. Plaintiff, however, reported that he was able to change and feed his seven-month old daughter only "when [he was] able to[,]" and that his wife and in-laws "do all the things [he] can't do like take her for walks or give [her] baths." Tr. 379. Also, with respect to the ALJ's finding that Plaintiff could perform light dusting, vacuuming, and cleaning, Plaintiff noted in his disability report that "sometimes [he] can't stretch far enough" to perform these task and, consequently, sometimes "someone else will assist" Plaintiff with these tasks. Tr. 380. Plaintiff added that these tasks take him "longer than average" to complete, and that sometimes he takes a break while attempting to do the dishes, and at other times, Plaintiff is "physically unable" to do any housework. Tr. 80, 380-81.

With respect to the ALJ's finding that Plaintiff retained the ability to drive and shop in stores, Plaintiff indicated that he does not drive when he is "in too

14

much pain" and that he "need[s] help getting to the E.R. or doctor." Tr. 381. Plaintiff added that if he does drive to his doctor, he "ha[s] to stand up for the rest of the [appointment]." Tr. 79. Plaintiff indicated that he shops in the store once per week with his wife for "light groceries[,]" but that it takes him "longer than average" to do so, and Plaintiff noted that he shops on the "phone/computer" for "other stuff [he] can't lift." Id. Plaintiff added that his wife is the "heavy lifter" at the grocery store and that he just grabs light items "like the cilantro" and, even then, sometimes his back hurts too much and he has to go sit in the car and wait for his wife to finish the grocery shopping.

Finally, with respect to the ALJ's finding that Plaintiff retained the ability to go for walks, Plaintiff indicated that his "doctor and [physical therapist] want [him] to walk when [he] can" and that he does so "a few times a week[,]" "when [he] can[,]" but "depend[ing] on the day, sometimes [he] can only make it a few feet." Tr. 382-83.

Accordingly, because the ALJ ignored evidence that suggests that Plaintiff's ADLs were more limited than the ALJ acknowledged, inconsistency with Plaintiff's ADLs was not a clear and convincing, nor even a specific and legitimate, reason for discrediting Drs. Penkoff's and Denicola's opinions. Holohan, 246 F.3d at 1207-08.

## IV. CONCLUSION

Because the Commissioner's decision is not supported by substantial evidence, IT IS HEREBY ORDERED that the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). See Garrison, 759 F.3d at 1009 (holding that under sentence four of 42 U.S.C. § 405(g), "[t]he court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing.") (citation and internal quotation marks omitted). On remand, the ALJ shall

15

consider and discuss the medical evidence of record, including the opinions of Drs. Penkoff and Denicola.

IT IS SO ORDERED.

DATED: 10/29/2018

HONORABLE SHASHI H. KEWALRAMANI
United States Magistrate Judge